Good morning. Our first argument today is Christ the King Manor Inc. v. The Secretary of the United States Department of Health and Human Services. Mr. Natterboff? Mattierboff. Mattierboff. My apologies. Welcome. Well done. My name is Dan Mattierboff. I represent the appellants in this matter, Christ the King Manor and 15 other long-term care nursing facility providers. I would like to preserve two minutes for rebuttal. Granted. We are now on a seven-year odyssey with respect to this case, which was initiated in October of 2009. Which leads to a question. What's at stake? You're looking for some money for the year in question, fiscal year 08-09? Yes, sir. And how much money would it be? Probably in the area of $10 million. Wow. Okay. And your arguments, as I understand them, are primarily procedural. You say what the district court did was inconsistent with this court's first mandate. And if that doesn't work, you say that the review by the secretary had to consider only the data that was the precursor to the new budget adjustment factor and that they're not permitted to consider what I call the answers to the test? Yes. What we learned after the fact. Is that a fair characterization of your two arguments? Mostly. Okay. With respect to the procedural argument, there was obviously no remand issued by the mandate of this court. There was no remand in the district court's order. You mean an explicit order saying remanded for additional evidence, remanded for additional fact-finding? That's correct. But it was in the opinion, was it not? In our opinion? No. There was some language there? There was language in a footnote. Isn't that language? It is language, Your Honor, but the court's order says what it says and doesn't say what it does not say. That sounds terrific. We were doing something out of Alice in Wonderland, but we're not there. And I don't mean to be facetious, but the court's order does direct a remand consistent with this opinion and the opinion has this footnote that says we don't say that they can't do additional investigation or present evidence and there's a bunch of case law that, as I understand it, says that it is a rare circumstance in which the remand is not permitted for that opportunity. Your Honor, the defendants were given that opportunity. One time. Not on the remand. They were given an opportunity to appeal this court's order and Judge Jones' order, which specifically addressed the party's concerns regarding the form of the order. So the remand would have, the appeal that they should have taken, your argument, is an appeal from the order that did not explicitly direct remand with an additional opportunity for evidence and fact-finding. Correct, Your Honor. And the letters were exchanged. So what is the best case that says that an appeal would be required to preserve that right? That's correct. Your best case for that, your best authority is? My best authority is that the cases are legion that a mandate says what it says and the order says what it says and basically the opposite. The mandate refers to the opinion. It incorporates the opinion, word for word. And both parties submitted proposed forms of order with respect to that. CMS, the secretary, requested that a remand specifically be issued, and the district court denied that and issued the form of order that it issued, which basically declared to our judgment in favor of the plaintiffs. We, you know, we often, at least as long as I've been on this court, we always consider the opinion as part of the order. Well, Your Honor, assuming that the remand is implied, say implicit in the order, there would be basically no statutory authority for the secretary to do what the secretary subsequently did. Right, but there's nothing that prohibits it either, right? Well, there is a statutory scheme that is created in terms of review of the state plan amendment, which was not followed here by the district secretary. Well, let's dive into that. 1396N seems to give the secretary broad berth to consider any and all information that would be necessary for her to do her job, correct? That's true. So then why would, I've been calling the post hoc data, but if you have a better nomenclature, I'm happy to hear it, but you know what I mean when I say the post hoc? I understand that. All right. What about 1396N prohibits or is inconsistent with the notion that the secretary should consider the post hoc data under the common sense principle that more information is better than less? And actual information is better than predictive. Right. That's true, but the purpose of the state plan amendment process is to use predictive information so that we don't have a data set. It is, it is, because that's the procedure here. And therein lies the rub. We don't want states to just willy-nilly put in numbers. I think we can all agree on that. But when you end up in the unusual procedural posture of this case, where you have the benefit of, again, what I call the answers to the test, why shouldn't the secretary, why mustn't the secretary consider the answers to the test? And here's why. I assume that had the answers to the test shown that there was grave reduction in quality of care with people dying and suffering terribly in the nursing homes, you would certainly be telling us that the secretary must reject the BAF on those grounds, would you not? Yes, Your Honor. Yes, but it renders the entire process a dead letter if they're allowed to see it as they do. How can you have a double standard like that? I'm sorry to interrupt you, but you can use it if it helps your position,  that would seem unprincipled. Your Honor, again, the purpose remains to ensure that quality of care is going to be provided at the BAF rates which were set. And the BAF rates have continued to be altered. The budget adjustment factor has been... Your clients are doing a remarkable job. Kudos to them because they've gotten reductions, but apparently the data show the quality of care has improved. Now, if the books were cooked and they were selectively choosing the data, I trust you would have brought that to our attention, but that didn't happen here, did it? No, Your Honor, but the data that's pointed to was rejected initially by this court in terms of proof that prospectively... Because they didn't show us their work. We have no idea of what they based this. It looks, and frankly, I'll concede, it looks like a plug number to me. I don't know what you'd call it, but it looks like a number they threw out there for budgetary reasons. That was the ex-ante number. Right. Yes. But it seemed to work out in their favor somehow. I don't know. They got lucky, I guess. Well, the ongoing budget adjustment factor, as pointed out by this court, did not consider quality of care specifically. Their arguments address the fact that the facilities continue to provide care consistent with the Department of Health regulations relating to quality, but it did not address the issue of whether that would continue on an ongoing basis to provide adequate access to the residents of these nursing facilities. I'd like to address the fact also that with respect to the procedural aspects of this, there is a procedure, a statutory procedure that is set up to basically address the state plan amendment and the process that can be taken. It's under 1316A. That procedure basically provides for a time frame of 90 days under A1 for the secretary to consider a new state plan amendment. Tell me your best authority for your proposition that these statutory time limits in 1316 apply in a case with this kind of procedural posture. I think you make them simply unworkable because you're by definition looking at what has happened in the past and you have this unusual posture of different time limits for procedural purposes. But procedurally we're looking at what the state of the state plan amendment was after this court's order, which basically rendered it not approvable at that point in time. The secretary did nothing after that order for a period of 160 days to address that situation. I'm going to ask the secretary why that delay occurred, but what is your authority for the proposition that that delay defeats our ability to consider the information that they considered? Because there's a statutory scheme in place that basically sets forth how to address these issues. So that goes back to the issue, to what we just talked about that Judge Hardiman raised with you. The statutory scheme being the procedural scheme as to how to address the state plan amendment. Is it reasonable to interpret 1316 as applying just to new plans and not to continuation? It is reasonable to assume that it applies to the state plan amendment process and the only statute in effect at that time. Assuming that we're considering a state plan amendment anew as of the date of the order of this court, the proper procedure would have been for the secretary to issue a decision within 90 days of that order or reach an agreement with the state to engage in an extended process to review the data submitted again. They did not do that. They did not even inform the plaintiffs that they were going to go through the process of reopening until, again, 160 days after the order, after the plaintiffs had pursued a motion for summary judgment in the state administrative court. That is seeking the $10 million that is at issue here for payment for services rendered to nursing facility residents. Why would notice and comment have been necessary the second go around? Well, for starters, you're considering an entirely wholly set of information, post hoc data, and the plaintiffs were probably entitled to submit additional information in response and comment on that process. There was no process, no notice, no opportunity to be heard. You could have presented that information to Judge Jones, could you not? I'm sorry, Your Honor? You just painted a picture of your clients being deprived the opportunity to meet the data that had been put together by the secretary, and you would have done that through a notice and comment process, but you didn't do it in the trial court. You could have done it in the trial court, but instead there were cross motions for summary judgment. In other words, in the trial court you didn't challenge the legitimacy of the post hoc data. No, Your Honor, we did not. But we just reached the threshold question of whether it was possible for the secretary to engage in this reopening process, which isn't authorized by statute. But it wasn't until you had already gotten – but it wasn't until after that that you, during the appellate process, that you even raised the question of the legitimacy of looking at the post hoc data. Is that correct? The trial court never considered that. Your Honor, the trial court considered the issues as presented, which were essentially procedural issues. The case should have never been in that posture at that point in time. Okay. Thank you, Mr. Metheoboff. We'll hear you on rebuttal. Mr. Sandberg. Good morning, Your Honors, and may it please the Court. Jeff Sandberg for the Federal Defendants. I think Your Honors, colloquially with my opposing colleagues, suggests that the Court has a good handle on the question of the permissibility of the remand. I would just add that the plaintiff's own conduct following this Court's first decision in September 2013 is fully consistent with what we're articulating here. The plaintiffs, in fact, sought rehearing in this Court because they thought the Court's opinion called for a remand, and they asked this Court for a reversal rather than a remand, and to do so on the Section 13a grounds on which the plaintiffs had not prevailed before. So I think everyone understands the Court's opinion here to have called for a remand, and I think some of the plaintiff's arguments here today suggest that they understood there was a remand, but then somehow there was post hoc data that shouldn't have been considered or that the agency took too long on the remand. Can you address both the question of delay on the remand and answer this question, am I correctly understanding your characterization of their argument as a post hoc argument on the post hoc data used in the remand? That's right, Your Honor. If you take a look at their amended complaint at pages 79 to 82 of the appendix, and more specifically, I think it's paragraphs 51 to 54, you'll see what kind of administrative law claim they pled in this case, and it was a claim that the Secretary lacked all authority to conduct any proceedings on remand. Now, had they wished to, they could have asserted an inconsistent alternative argument that even assuming the Secretary had authority, she abused her discretion in considering impermissible data. That claim wasn't in the complaint, and so when we filed our answer, we didn't address such a claim. When we compiled our administrative record, we didn't consider such a claim. Is the proper standard arbitrary in Capricious or Chevron deference? On which claim, Your Honor? On either the ability to reopen or probably more with greater force in the question of the use of the post hoc data and in reaching the conclusion that was reached, the fact finding. First of all, and whether there was a remand to the agency at all, it's a question of the scope of this Court's first mandate. That's not a Chevron issue or anything, that's just an issue of law for us. That's right. So then the question is, what did the Secretary do on remand? It's essentially both an arbitrary Capricious issue and a Chevron issue. It's a Chevron issue to the extent that plaintiffs are arguing that the Medicaid statute by its terms precludes the Secretary from considering data that the Secretary relied on here. I don't see that in 30A, though. That's right. That's why it's kind of funny to think about it as Chevron. 30A is not a Chevron provision. It talks about method and procedure. But maybe 1396N is. Do we deal with this case differently than the first panel because so much has changed since the first panel considered this case? Namely, the first panel didn't have the Secretary's letter requesting more information, and the Secretary got that information, and the District Court considered all that. So should we just apply 1396N and say the Secretary has the power to seek more information, and in considering the information it received, she did not act arbitrarily and capriciously? That's right. So I share Your Honor's reservation of thinking about this quite as a Chevron issue, but the reason why it's in Chevron is because the plaintiffs are saying the statute bars it, and so then we have to conduct a statutory interpretation analysis. But I think we agree that the statute doesn't bar it. That's right. Nor does it authorize it explicitly. So then the question is just is what the Secretary did here reasonable? And it is reasonable. It's consistent with fundamental principles of administrative law. But it's troubling. It's troubling. And I'd like you to educate us. Is this unprecedented? There are other cases out there. We didn't find them. This isn't the Administrative Outcomes Act. It's the Administrative Procedure Act. So procedure matters here. And certainly we don't want to be sending a message to the Secretary that it's okay to not do her homework in making sure that the states do their homework when they make these grave decisions regarding reimbursements to poor people in nursing homes. So I have a concern that maybe you still win, but even if you win on the law, there's a real policy concern here about the way this happened. Could you address that? Your Honor, the agency has heard the message loud and clear that this decision the first time around didn't contain an adequate justification, and it did a better job on remand, and given the posture of this case, it turns out that there was some data available that they would not have been able to consider the first time around. But as you aptly pointed out, that data very well could have cut the other direction. There's nothing to say that the Secretary was only going to consider the data that is favorable to the Secretary's initial decision. I'm sorry. You're a very fast talker. My apologies. No, don't apologize to me. You're covering a lot of ground very quickly. Is there a case you can point us to that provides good authority, either in this circuit or in other circuits, for an agency on a remand using post hoc data that was not available before the decision issued under a statute that is at least quite similar in wording to the one that we have here? That's my first question. The second question is, why did it take so long? What was the five-month or so delay that your opposing counsel pointed out to us? Sure. So to take those in order on the first question, there are a couple cases that come to mind. One is the D.C. Circuit's decision in the Medical Waste Institute case in which there had been an initial decision that the agency had EPA in setting Clean Air Act standards for medical waste incinerators, had basically relied on data that the court didn't find reliable and using a method that the court didn't find reliable. And the agency on remand said, we're going to take a new data set. And in the meantime, we've had actual emissions data for medical incinerators that didn't exist before. And it resulted in higher standards than there had been the first time around. And in the second stage of judicial review, the medical waste incinerator industry argued that it was impermissible to consider data that hadn't existed during the first round of judicial review. And the D.C. Circuit was perplexed by that assertion because they said, when we remand the case to the agency, we actually want the agency to take a fresh look at the problem. Florida Power and Light says, remand for additional investigation. And it would be crazy to think that the agency is supposed to blind itself to what is indisputably the best available data. There's also this court's decision in Bridge v. Parole Commission from 1992 in which it's a little bit different. This is back in the days of federal parole. But the parole commission, the first time around, had made a decision that a defendant essentially wasn't eligible for parole because of uncharged criminal conduct. And the evidence supporting that conclusion was found to be insufficient. The parole commission went back and found additional, more reliable evidence that the uncharged criminal conduct had been committed. And then the district court said that the administrative record had been frozen as of the first judicial review, and it was inappropriate for the parole commission to consider additional evidence. And this court, in fairly strong terms, said, no, that's not how administrative law works. When a matter is committed to the agency to decide in the first instance and the case is remanded to the agency, the agency should be looking at all relevant evidence. On the delay point, it's true that the agency took four or five months on remand to reopen its proceedings. But the plaintiffs also took four or five months to resume their litigation and the state administrative proceedings. So it's somewhat ironic that they're faulting us for a delay. I would point out, first, that 1316A1 doesn't – we don't understand that to control in a remand from a court, that a decision must be made in 90 days. But even if you did – Why don't you? Why doesn't it control? Because it's a remand from the court rather than a submission of a new state plan amendment. But it actually doesn't matter here, Your Honor, because if you look to 1396NF2, which is the same provision that says the secretary can solicit additional information, that same statute also provides that if the secretary doesn't act within 90 days, the application is deemed granted. So if the plaintiffs believe that the secretary had to act within 90 days and failed to do so, the plan amendment would have become deemed granted and then they would have needed to have challenged that approval in court, which they didn't do. So on the 91st day, they should have run into court and said, this plan was granted again and they didn't do anything. Well, why wouldn't they? They could complain in this case, but they didn't. The only thing they argued in this case was that there was no remand at all until summary judgment when they tried to constructively amend their complaint by asserting new claims that hadn't been pled. And I just wanted to make sure that everyone understands that there hasn't been any challenge to the quality of the data that was used on the remand here. The district court found that this was, you know, grade A data, and the only question is, is there something in the Medicaid statute that required the secretary to blind herself to that information? And there's nothing in the statute that says that. Did the plaintiffs have the opportunity to challenge that data? That's right. They could have argued that that data was unreliable, was arbitrary and capricious, and they didn't do so. And how would they have brought that? They would have filed something with the district judge? It could have been as part of this complaint. They could have added an account saying that the secretary's decision was arbitrary and capricious because of the data that it relied upon. I heard my colleague mention something about notice and comment rulemaking. This isn't a rulemaking. This is an adjudication. The state submits a state plan amendment to the secretary. The secretary considers it. There's no obligation for data to be shared publicly, but the plaintiff has been able to, I think, obtain that data through state right-to-know-what provisions. And in any event, you can challenge a decision in court. The secretary has to come forward with her administrative record. That was done here, and there's been no challenge to the quality of the data. If there are no further questions, we ask that the judgment be affirmed. Thank you, Mr. Sandberg. Rebuttal, Mr. Natyubov. Was there a reason that you did not challenge the reopening when it occurred? We were informed. It was by, after the 90th day, raising the issue of an appeal from or an appropriate procedural mechanism to challenge the fact that it had now been deemed approved. According to the statute that was just issued. The court had set aside the state plan amendment as not approvable. There was no approvable state plan amendment at that point in time. If the judiciary put into place this procedure and 90 days later it was deemed approved, why wouldn't that have? Because there was no approvable state plan amendment submitted at that point in time. Again, the procedures were not followed. There was no submission of the state plan. Again, there was no review of the state plan. There was no agreement between the parties to extend the period of time. So you just don't think the 1396 NF2 even applied? Not in this case, but we believe 1316A was the procedure for the parties to take, and they didn't take it. There was no agreement between the parties. There was no statutory authority for the secretary to do what they did, to reopen this case and create an entirely new procedure, an ultra-virus procedure that's not provided for in the statute. What exactly is the ultra-virus procedure here? It seemed to me it was a request for information. That's what the letter says, right? I'm talking about the May 30, 2014 letter. There was essentially a reopening of a state plan amendment that was already set aside by this court. So it goes back again to the permissibility of the remand to do what they did. That's correct. And there is no implicit remand. There's no remand. There's expressly not a remand. There was no appeal from the decision not to have a remand. There was no reconsideration request of Judge Jones' order, which basically just opened to the parties the opportunity to submit a form of order and discuss whether the matter should be remanded. Basically, the secretary waited quietly until 160 days after the issuance of the order to move, after the parties had already gone through with their motions for summary judgment in the administrative court. Shalala, actually, is on point to some degree, where the secretary actually agreed that there was no procedure, basically, to go through this type of process, and this court ordered that in Shalala that they reconsider the state plan amendment retroactively. So it's kind of contrary to their position in this case. Okay. Anybody else? Thank you, Mr. Wentierboff. The court appreciates the excellent argument of counsel in the briefing. We'll take the matter under advisory.